STEWART, J.
 

 |! Preserving his right to appeal the denial of his motion to suppress, the defendant, Jerry Baldwin, pled guilty to second offense possession of marijuana, a violation of La. R.S. 40:966(E)(2)(a), and received a sentence of five years at hard labor with credit for time served. Baldwin now appeals the denial of his motion to suppress.
 
 *1260
 
 Finding no abuse of discretion in the trial court’s ruling, we affirm the defendant’s conviction and sentence.
 

 FACTS
 

 Baldwin was arrested on May 25, 2004, as part of a controlled delivery operation conducted by the Street Level Interdiction Unit of the Shreveport Police Department with the assistance of a “cooperating source” (hereafter referred to as the “informant”), who had contacted Agent Bo Lumas that morning about buying marijuana from Baldwin.
 

 On August 3, 2004, Baldwin appeared with counsel for the preliminary examination hearing. Agent Lumas was called as the first witness. Lumas testified that on the morning of May 25, 2004, he spoke with the informant who said that he could purchase marijuana from Baldwin. The informant explained to Lumas that he had done so in the past and was willing to do so again to assist in arresting Baldwin and seizing the drugs. Lumas stated that plans were made to conduct an operation. The informant contacted Baldwin by phone at 7:00 p.m. and ordered a half pound of marijuana. At 7:35 p.m., the informant called Baldwin again to get his time of arrival at the meeting place, which was to be the Whataburger parking lot at the 2900 block of Market Street. Baldwin advised that he’d be there in a matter of minutes, and he arrived at ^Whataburger at 8:10 p.m. Lumas related that the arrest team pulled behind Baldwin and ordered him from the vehicle. As he exited, the marijuana fell from his lap onto the ground. The marijuana was field tested and determined to weigh 58.8 grams. After being
 
 Mirandized,
 
 Baldwin admitted the marijuana belonged to him. On cross by counsel for Baldwin, Lumas testified that they did not monitor the calls made by the informant and explained, “We were present when the cooperating source made the phone call. He just relayed the information to us, you know, talked about it over the phone to us.” Lumas stated that neither the stop nor Baldwin’s arrest were videotaped.
 

 After his counsel indicated she had no more questions for Agent Lumas, the defendant stated that he did and began questioning Agent Lumas about the charge against him. The trial judge became concerned that Baldwin did not understand the proceedings. After conferring with counsel off the record, the trial judge ordered a sanity commission to examine Baldwin and did not complete the hearing. Baldwin was released on a bond.
 

 The state filed a bill of information on February 8, 2005, charging Baldwin with possession of marijuana with intent to distribute, a violation of La. R.S. 40:966(A)(1). Neither Baldwin nor counsel appeared in court that day. At the state’s request, the trial judge issued a bench warrant for Baldwin’s arrest and set a bond forfeiture hearing. Later, the trial judge ordered the bond forfeited. After several more continuances, a second sanity commission was appointed on June 16, 2007. The sanity hearing was |3eventually submitted on the reports filed, and by judgment rendered July 21, 2008, the trial judge found Baldwin incompetent to proceed and committed him to the Feliciana Forensic Facility. At a subsequent sanity hearing on August 17, 2009, Baldwin was found competent to proceed.
 

 On September 17, 2010, Baldwin filed a pro se motion to suppress, which was subsequently adopted by his attorney. Baldwin alleged that at the time the marijuana was seized the police had neither a warrant nor probable cause for a search or arrest. He complained that the police had not corroborated information provided by the confidential informant and did not witness him engaged in any criminal activity inasmuch as his actions in arriving at the
 
 *1261
 
 Whataburger were consistent with innocent activity. As such, he argued that both the marijuana and his statement admitting it was his should be suppressed.
 

 Baldwin’s case came up for trial on September 27, 2010. Baldwin represented himself but had the assistance of “standby” counsel appointed by the court. The state related to the trial judge that it had made two plea offers to Baldwin, either of which would provide him with a time served sentence. Baldwin refused to plead to possession with intent to distribute, but he was willing to plead to second offense possession with the maximum sentence of five years, provided he was given a hearing on his motion to suppress and afforded the opportunity to appeal in the event of a denial of his motion.
 

 In arguing for a hearing on his motion to suppress, Baldwin asserted that the police reports related two versions of what had occurred. He l4asserted that a report signed by an Agent Recchia gave the correct version. Recchia’s report states that he observed an agent make contact with Baldwin and take him to the ground to pat him down for weapons. The report goes on to state, “As Baldwin was rolled to his side I observed a clear bag containing green vegetable material. Baldwin was assisted to his feet and the bag of suspected marijuana fell to the ground from his waistband.” A separate unsigned police report, which Baldwin claims is incorrect, states that the officers had Baldwin exit his vehicle and ordered him to the ground and that the marijuana fell to the ground as Baldwin exited his vehicle. This report corresponds with the testimony of Agent Lumas at the preliminary examination hearing.
 

 After further discussion, Baldwin agreed to consider that his motion to suppress had been heard based on his stipulations to the testimony of Agent Lumas from the preliminary examination hearing and the police reports, particularly the one signed by Agent Recchia. Baldwin refused to stipulate to the unsigned report, and the trial judge stated it would not be considered. Baldwin also testified. Baldwin stated that the officers physically removed him from his car by grabbing him, pulling him out of the car, taking him to the ground, and handcuffing him behind his back. He admitted that the marijuana fell from his waistband as they stood him up from the ground. On cross, he also admitted that he had tucked the marijuana into his waistband and brought it to the Whatabur-ger. He claimed he went there to eat and explained that he lived close by and went to Whataburger almost daily. He also claimed that the marijuana was his for | Bsmoking, and he denied speaking with anyone that day or even in his life about selling marijuana. However, he admitted to a prior conviction for marijuana possession, numerous marijuana-related arrests in Texas, and a prior manslaughter conviction.
 

 Based on the evidence entered by stipulation and Baldwin’s testimony, the trial judge denied the motion to suppress.
 

 After the state amended the bill of information to the charge of second offense possession of marijuana, the trial judge
 
 Boykinized
 
 Baldwin, who pled guilty while reserving his right to appeal the denial of the motion to suppress. Pursuant to the plea agreement, the trial judge sentenced Baldwin to five years at hard labor, with credit for time served. Baldwin now appeals.
 

 DISCUSSION
 

 On a motion to suppress, the defendant bears the burden of proving the ground of his motion, but the burden is on the state to prove the admissibility of a purported confession or evidence seized without a warrant. La. C. Cr. P. art. 703(D). A
 
 *1262
 
 trial court’s decision relative to suppression of evidence is afforded great weight and will not be set aside absent an abuse of that discretion.
 
 State v. Wells,
 
 2008-2262 (La.7/6/10), 45 So.3d 577.
 

 Baldwin asserts that the trial court erred in denying his motion to suppress and that the state did not prove the officers had probable cause to justify their warrantless search and seizure. He complains that the state failed to call either Agent Lumas or Agent Recchia to resolve the | ficontradictions between Recchia’s report and Lumas’s testimony and that the trial court ignored evidence that he was subjected to a pat down search when the officers had no reasonable basis to believe he was armed and dangerous.
 

 The search and arrest of Baldwin were conducted without a warrant. A search conducted without a warrant is per se unreasonable with there existing only a few specifically established and well-delineated exceptions.
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973);
 
 State v. Raheem,
 
 464 So.2d 293 (La.1985);
 
 State v. Lumpkin,
 
 2001-1721 (La.App. 1st Cir.3/28/02), 813 So.2d 640,
 
 writ denied,
 
 2002-1124 (La.9/26/03), 854 So.2d 342. A search incident to a lawful arrest is one such established exception.
 
 Chimel v. California,
 
 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969);
 
 State v. Hargrove,
 
 535 So.2d 497 (La.App. 2d Cir.1988). However, an incident search may not precede an arrest and serve as part of the justification for the arrest.
 
 State v. Sherman,
 
 2005-0779 (La.4/4/06), 931 So.2d 286,
 
 citing Sibron v. New York,
 
 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Where probable cause does not exist until after the search, the search cannot be justified as incident to a lawful arrest.
 
 Id.
 

 However, if an arrest was justified before the search, it is not unreasonable for the search to be made before the arrest rather than after.
 
 State v. Melton,
 
 412 So.2d 1065 (La.1982). In fact, if probable cause to arrest exists before the search, then a search incident to arrest that is conducted immediately before the arrest is valid.
 
 State v. Sheiinan, supra.
 
 |7In such cases, it is essential that the arrest is made “substantially contemporaneous” with the search.
 
 Id.
 

 An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of the person, rather than at the precise time an officer informs that person that he is under arrest.
 
 State v. Tomasetti,
 
 381 So.2d 420 (La.1980);
 
 State v. Raheem, supra. See also
 
 La. C. Cr. P. art. 201.
 

 Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime.
 
 Beck v. Ohio,
 
 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964);
 
 State v. Davis,
 
 357 So.2d 519 (La.1978);
 
 State v. Raheem, supra; State v. Hargrove, supra.
 
 Probable cause must be judged by the probabilities and practical considerations of everyday life on which average persons, particularly average police officers, can be expected to act.
 
 State v. Ruffin,
 
 448 So.2d 1274 (La.1984).
 

 Information received from a confidential informant may provide probable cause for an arrest as long as the basis for the information and the informant’s reliability, when examined under the totality of the circumstances, are established.
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983);
 
 State v. Hargrove, supra.
 
 The informant’s veracity, reliability, and basis of knowledge, while no longer controlling, remain relevant factors in the
 
 *1263
 
 totality of the circumstances examination. 1
 
 Illinois v. Gates, supra; State v. Hargrove, supra.
 
 Corroboration of the details of an informant’s tip by independent police investigation is also valuable in examining the totality of circumstances.
 
 Illinois v. Gates, supra; State v. Raheem, supra; State v. Austin,
 
 04-993 (La.App. 5th Cir.3/1/05), 900 So.2d 867,
 
 writ denied,
 
 2005-0830 (La.11/28/05), 916 So.2d 143.
 

 Baldwin stipulated to the testimony of Agent Lumas from the preliminary examination and the report signed by Agent Recchia. The evidence presents two versions of what occurred when Baldwin arrived at the Whataburger and when the marijuana was found. The state did not call any witness to reconcile or explain these differing accounts. Regardless of which version is believed, whether the officers had probable cause to search and/or arrest Baldwin upon his arrival at the Whataburger based on the information provided by the informant is determinative of whether the motion to suppress has merit.
 

 Agent Lumas testified that he spoke with an informant who stated that he had bought marijuana from Baldwin before and was willing to do so again to help make an arrest and enable seizure of the marijuana. Plans were then made for the operation. The informant called Baldwin at 7:00 p.m. to order some marijuana, and then called him again at 7:35 p.m. to find out when he would arrive at the designated location. Baldwin allegedly told the informant that he’d be there in a matter of minutes, and he arrived at around 8:00 p.m. The police did not monitor these calls, and Lumas’s testimony was somewhat contradictory as to whether they were actually present with the informant when he made the calls. First, Lumas stated they [nwere present, but then he stated that the informant “just relayed the information to us, you know, talked about it over the phone to us.” Despite Agent Lumas’s confusing testimony, it remains clear that the informant relayed to the officers the arrangements he made with Baldwin to buy marijuana from him.
 

 Agent Recchia’s report indicates that he was conducting surveillance in an undercover vehicle that was positioned to see the arrival of the target vehicle, which was described as a green Ford Taurus. Thus, it appears the police were looking for the arrival of a specific vehicle driven by Baldwin. According to Recchia’s report, Baldwin arrived at the Whataburger at 8:00 p.m., at which point the undercover vehicle pulled up behind him and Agent Raymond made contact with Baldwin, taking him to the ground and patting him down for weapons.
 

 It is clear from the testimony of Agent Lumas and the report by Agent Recchia that the informant arranged the drug buy and informed the police of the location where he was to meet Baldwin, the time of his arrival and, presumably, the type of vehicle he would be driving. This information was confirmed by the police who observed Baldwin’s green Ford Taurus arrive at the Whataburger at the 2900 block of Market Street within a half hour after the informant last spoke with him.
 

 In
 
 State v. Ruffin, supra,
 
 the supreme court reversed a conviction upon finding that the trial court erred in denying the defendant’s motion to suppress. A confidential informant, who had provided reliable information in the past, called the police to report that the defendant had a stolen check |10and was looking for someone to help him cash it. He also provided the defendant’s location. The police proceeded to the location and saw the defendant get into a vehicle with two other persons. The police stopped the vehicle, ordered the occupants out, and searched both the vehicle and occupants. They
 
 *1264
 
 found the stolen check on the defendant. The supreme court rejected the state’s argument that the information provided by the informant gave the police probable cause for the defendant’s warrantless arrest. The fact that the informant had been reliable in the past was not enough under the totality of the circumstances analysis to establish probable cause, particularly where the only corroborated fact was the location of the defendant. The supreme court found that this alone did not establish that the defendant was engaging in illegal activity. The court noted that it was not known how the informant knew that the defendant was at the location, that the check was stolen, or that the defendant was trying to find someone to help him cash it.
 

 The supreme court also determined that motions to suppress should have been granted in
 
 State v. Raheem, supra.
 
 An informant, who had provided reliable information in the past, told an officer that two females and one male were selling drugs in a known drug dealing area. The informant described the vehicle and related the location where the drug dealers could be found. The police proceeded to the location, saw the vehicle, stopped it, and ordered the occupants out of the car. A search of a purse belonging to one of the occupants uncovered illegal drugs. Bullets and cash were found on another occupant. Under the totality of the | ncircumstances analysis, the supreme court found that there was no probable cause for the defendants’ arrests. The supreme court focused on the fact that the informant did not explain how he knew the defendants were selling drugs. Nothing established that he had personal knowledge of the information provided to the police. The officers’ corroboration of the location and vehicle described by the informant did not indicate that the defendants were engaged in illegal activity, and the officers did not observe them doing anything suspicious.
 

 Unlike the situations in
 
 Ruffin, supra,
 
 and
 
 Raheem, supra,
 
 wherein there was no evidence showing how the informant came about the information provided to the police, here the evidence shows that the information provided to the police was based on the informant’s personal knowledge. The informant contacted Agent Lumas, told him that he had bought drugs from Baldwin in the past, and that he was willing to do so again to help make an arrest. The informant arranged to meet with Baldwin for the purpose of buying marijuana from him and informed the police of the location and time of the meeting. Based on the information provided by the informant, which was confirmed by their own surveillance of the arranged meeting area, the police had probable cause upon Baldwin’s arrival at the designated place, at the designated time, and in the target vehicle to conduct a search and to arrest Baldwin based on the reasonable belief that he was there to sell marijuana.
 

 The facts of this matter are similar to those in
 
 State v. Hargrove, supra,
 
 in which an informant provided information that two males in a black 112Chrysler Cordoba had cocaine and would soon be leaving a specific address. The police went to the location, spotted the vehicle, followed it for a short distance, stopped it, and then searched the occupants by first conducting a pat down and then a more extensive search. A small plastic bag containing cocaine fell to the street from the defendant’s pant leg. In affirming the defendant’s conviction, this court rejected the argument that the trial court erred in denying the motion to suppress. The court noted that the police corroborated the information provided by the informant by proceeding to the address given by the informant and by their observations. The informant provided information of recently observed specific criminal activity by a specific person at a specific location. The
 
 *1265
 
 informant, who had been reliable in the past, had seen the defendant with the cocaine. While the court noted that it was difficult to determine under the facts whether the search or arrest occurred first, it concluded that under a totality of the circumstances analysis, the officers had probable cause regardless of which occurred first.
 

 We recognize that there is nothing in this record concerning the past reliability of the informant. However, under the totality of the circumstances analysis, reliability of the informant is not alone determinative. The lack of information as to past dealings between the police and the informant must be considered along with the facts that the information he provided to Agent Lumas was based on his personal knowledge and his having arranged the meeting with Baldwin at the designated location and time for a specific criminal purpose. The 1 ^information was corroborated by the officers who arranged surveillance at the designated location and observed the defendant arrive within a short time after the last call made by the informant to Baldwin. The totality of the circumstances of this case convinces us that the officers had probable cause to arrest or to search the defendant, regardless of which came first, and that the trial court did not abuse its great discretion in denying the motion to suppress.
 

 CONCLUSION
 

 For the reasons explained, the motion to suppress was properly denied, and the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.