JOAN BERNARD ARMSTRONG, Chief Judge.
 

 hThe defendant, William Platte, appeals the trial court’s denial of his motion to suppress the evidence. Given the testimony adduced at the suppression hearing, the trial court did not err by refusing to suppress the evidence. For the reasons that follow, we affirm the defendant’s conviction and sentence.
 

 STATEMENT OF CASE
 

 The State charged the defendant on May 7, 2009, with one count of possession of codeine, a charge to which he subsequently pled not guilty. On July 23, 2009, after the court heard and denied his motions to suppress the evidence and statement, the defendant withdrew his not guilty plea and pled guilty as charged pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), reserving his right to appeal the trial court’s ruling on his suppression motion. The court accepted his plea and sentenced him to one year at hard labor, suspended, and placed him on one year probation with special conditions. The court granted the defendant’s motion for appeal on August 5, 2009.
 

 |
 
 .¿FACTS
 

 At the suppression hearing, Off. Athena Monteleone testified that on March 25, 2009, she and her partner were patrolling in a marked police car in the Eighth District, where there had been an increase in vehicular break-ins. Off. Monteleone testified that at approximately 11:15 p.m., they saw the defendant, William Platte, leaning almost into the bed of a truck that was parked on Frenchmen Street. Off. Mon-teleone stated that the defendant appeared startled when he saw the officers driving
 
 *377
 
 toward them. The officers stopped and exited their car, and they asked the defendant to come over to them. As he did so, he put his left hand in his pants pocket. The officers ordered him several times to remove his hand from his pocket, and at first he refused to do so, but he finally complied. The defendant identified himself, and in response to the officers’ question concerning whether the truck was his, he stated that the truck belonged to a friend who had just walked around the corner. The officers ran the defendant’s name and discovered that there was an outstanding warrant for his arrest. The officers arrested him pursuant to the warrant, advised him of his rights, and searched him incidental to the arrest. They discovered four Tylenol codeine pills. Off. Monteleone testified that she asked the defendant if he understood his rights, and he replied that he did. She then asked him if the pills were his, and he answered that they were. Off. Monetelone testified that she learned that the defendant did not have a prescription for the pills.
 

 On cross-examination, Off. Monteleone stated that she and her partner were on routine patrol and were not responding to any calls for service when they saw the defendant leaning on the truck. She stated that the area where they stopped the defendant, the 1000 block of Frenchmen near St. Claude Avenue, was well-lit. She denied that the defendant told them that he was walking home from work at the |:itime. She reiterated that the defendant was not actually leaning into the truck; he was merely looking into the truck bed. She stated that the defendant stepped back from the truck and backed up to a fence when he saw the police car approaching him. She stated that when the defendant approached them and refused to take his hand out of his pocket, the officers were unsure what he had in his pocket. She insisted that the defendant was free to leave up until the time they found out about the warrant and arrested him.
 

 Errors Patent
 

 A review of the record for patent errors reveals there are none.
 

 Assignment of Error
 

 By his sole assignment of error, the defendant contends that the trial court erred by denying his motion to suppress the evidence. He argues that because the officers did not have reasonable suspicion to stop him, the subsequent discovery of the outstanding arrest warrant did not purge the taint of the initial detention. He maintains that this illegality tainted the subsequent arrest pursuant to the warrant and the resulting search incidental to the arrest that led to the discovery of the codeine. He acknowledges the Louisiana Supreme Court’s holding in
 
 State v. Hill,
 
 97-2551 (La.11/16/98), 725 So.2d 1282, but he attempts to distinguish
 
 Hill
 
 and cites cases from other states.
 

 In
 
 Hill,
 
 the Court noted that it was arguable that the officers did not have reasonable suspicion to stop the defendant. Nonetheless, they ran his name and found that there was an outstanding warrant for his arrest. The trial court suppressed the evidence, and on review this court agreed, finding that the officers would not have learned of the outstanding warrant but for the illegal stop.
 
 State v.
 
 |
 
 ¿Hill,
 
 97-1012 (La.App. 4 Cir. 9/17/97), 700 So.2d 551. The Supreme Court reversed, finding that the outstanding warrant “attenuated” the seizure from the possibly illegal stop. Despite noting that deterring impermissible police conduct was the purpose of the exclusionary rule, the Court reiterated the well-settled judicial exceptions to the exclusionary rule, including the “attenuation doctrine,” citing
 
 U.S. v. Crews,
 
 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980),
 
 *378
 
 and
 
 State v. Welch,
 
 449 So.2d 468 (La.1984). The Court stated:
 

 In
 
 Brown v. Illinois,
 
 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), the United States Supreme Court enunciated the multi-factor test presently used to consider whether evidence impermissibly seized should be suppressed. The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the pui'pose and flagrancy of the official misconduct.
 
 Brown,
 
 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427;
 
 State v. Scott,
 
 389 So.2d at 1288. [footnote omitted] Additionally, in considering whether the evidence should be suppressed, Brown requires us to weigh each consideration in light of the policies behind the Fourth Amendment.
 

 Hill,
 
 97-2551 at. pp. 3-4, 725 So.2d at 1284. The Court noted that the warrant was an intervening circumstance which dissipated the “taint of an initial impermissible encounter.”
 
 Hill
 
 at p. 5, 725 So.2d at 1285. After analyzing cases from other jurisdictions which also found that a warrant was an intervening event, the Court stated:
 

 Because we find an intervening circumstance under
 
 Broum,
 
 we need not decide whether the fourth circuit was correct in holding that the officers lacked reasonable suspicion for the initial
 
 Terry
 
 stop and frisk of the defendant because, assuming arguendo that the NOPD officers did conduct an impermissible
 
 Terry
 
 stop, no evidence was recovered during that search; rather, the evidence was not seized until after the officers |sdiscovered the two outstanding arrest warrants, arrested the defendant, and conducted a lawful search incident to his arrest on the outstanding warrants. The officers’ [sic] did not arrest and search the defendant due to exploitation of the initial
 
 Terry
 
 stop or due to any evidence gained through the exploitation of the initial stop. Instead, the officers lawfully arrested the defendant pursuant to the outstanding arrest warrants under La. C.Cr.P.art. 213. The interim discovery of the existence of the two outstanding arrest warrants provided the sole basis for the defendant’s arrest and constituted an intervening circumstance under the third consideration of
 
 Brown.
 

 Hill,
 
 at p. 8, 725 So.2d 1286-1287 [emphasis added]. The Court emphasized that the contraband was found only after the officers had arrested the defendant on the outstanding warrant. See also
 
 State v. Marin,
 
 2001-0787 (La.App. 4 Cir. 1/9/02), 806 So.2d 894;
 
 State v. Perez,
 
 99-2063 (La.App. 4 Cir. 9/15/99), 744 So.2d 173.
 

 Here, the defendant attempts to distinguish
 
 Hill
 
 by noting that the Court in
 
 Hill
 
 stated that the officers “arguably” did not have reasonable suspicion to support the investigatory stop, while here he argues that the officers “flagrantly and purposefully” acted without reasonable suspicion. However, the officers in
 
 Hill
 
 had just as much or as little reason to suspect the defendant as the officers here had to suspect the defendant. In
 
 Hill,
 
 the officers were patrolling in an area about which they had received general tips concerning drug activity, but they had no tip concerning names or descriptions of those involved. The officers saw the defendant and another man near an abandoned house, and the men began walking away when they saw the officers approaching. Based on these circumstances, the officers stopped the men and frisked them. Likewise, here the officers were not acting on any specific call for service, but they were in an area where there had been an in
 
 *379
 
 crease of vehicular break-ins. As they drove down the street, they saw the defendant leaning against a truck and looking into its bed. The defendant |fimoved away from the truck and back to a fence when he saw the officers approaching. The nature of the area, the defendant’s attention to the bed of the truck, and his startled jump away from the truck back to the fence gave Off. Monteleone and her partner at least as much suspicion of criminal activity as the officers had in
 
 Hill.
 
 Contrary to the defendant’s argument, the officers’ actions here did not “flagrantly and purposefully” disregard his rights to a greater extent than did those of the officers in
 
 Hill.
 
 In both cases, it was the intervening circumstance of discovering the outstanding warrant that led to the arrest incidental to which the contraband was found. As in
 
 Hill,
 
 this intervening circumstance dissipated any taint that may have occurred if, indeed, the officers did not have reasonable suspicion of criminal activity to support the stop. Thus,
 
 Hill
 
 is not distinguishable, and its ruling controls this case. The defendant’s reference to cases from other states that hold differently is at most persuasive;
 
 Hill’s
 
 holding is binding on this court and the trial court. Therefore, the trial court did not err by denying the defendant’s motion to suppress the evidence. Accordingly, the defendant’s sole assignment of error has no merit.
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.